UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZACHARY BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 C 3367 |
| vs. | ) | |
| | ) | Judge Feinerman |
| U.S. BANK, N.A., as trustee for SASCO AAMES MORTGAGE LOAN TRUST, SERIES 2003-1, and WILSHIRE CREDIT CORPORATION n/k/a BANK OF AMERICA, N.A., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zachary Boyd brought this putative class action against U.S. Bank, N.A., as trustee for Sasco Aames Mortgage Loan Trust, Series 2003-1, and Wilshire Credit Corporation n/k/a Bank of America, N.A., seeking redress under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*. ("ECOA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 502/1 *et seq*. ("ICFA"), and Illinois common law. Defendants have moved to dismiss Counts I-IV of Boyd's amended complaint. The motion is granted in part and denied in part.

**Background**

The facts alleged in the Boyd's amended complaint are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Also pertinent at the Rule 12(b)(6) stage are exhibits attached to the amended complaint, *see* Fed. R. Civ. P. 10(c); *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004), and documents "referred to" in the amended complaint and "central to [Boyd's] claim" that are attached as exhibits to Defendants' motion to dismiss, *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.

1994). To the extent an exhibit contradicts the amended complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). In addition, orders entered and filings made in this and other courts are properly subject to judicial notice. *See United States v. Stevens*, 500 F.3d 625, 628 n.4 (7th Cir. 2007).

Boyd took out two home loans in July 2003. Through a series of transactions, Boyd's mortgage debt came to be owned by a trust of which U.S. Bank acts as trustee. The loans were serviced by Wilshire Credit, and then by Bank of America.

In October 2005, a prior holder of the mortgage debt filed a foreclosure action against Boyd in the Circuit Court of Cook County, Illinois. *See Deutsche Bank Nat'l Trust v. Boyd*, 05 CH 18536 (Cir. Ct. Cook Cnty.). Boyd filed for bankruptcy in November 2005, but the bankruptcy action was dismissed in December 2006 because he failed to make payments under the bankruptcy plan. *See In re Zachary Boyd*, 05 B 63283 (Bankr. N.D. Ill.). Boyd again filed for bankruptcy in March 2007, but that case was dismissed in January 2008, again because Boyd failed to make plan payments. *See In re Zachary Boyd*, 07 B 4545 (Bankr. N.D. Ill.). Boyd filed for bankruptcy yet again in January 2009, and again failed to make plan payments, resulting in dismissal in June 2009. *See In re Zachary Boyd*, 09 B 2366 (Bankr. N.D. Ill.).

In August 2009, five months after Boyd made his last mortgage payment, Defendants—who in the interim had become the mortgage holder and servicer—initiated another foreclosure action against Boyd. *See U.S. Bank Nat'l Ass'n, as Trustee v. Boyd*, 09 CH 29647 (Cir. Ct. Cook Cnty.). One month later, Boyd asked Greenpath, Inc., a certified HUD housing counselor, for assistance in obtaining a loan modification under the Home Affordable Modification Program ("HAMP"). A federal program established by the Treasury Department under the Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 *et seq.*, HAMP

seeks to prevent unnecessary foreclosures by encouraging banks to restructure and refinance certain mortgages in default or in imminent risk of default. *See Williams v. Geithner*, 2009 WL 3757380, at *1-3 (D. Minn. Nov. 9, 2009) (summarizing HAMP). U.S. Bank, Bank of America, and Wilshire Credit participate in HAMP; their participation is governed by separate Servicer Participation Agreements ("SPA") entered into with Fannie Mae in its role as a financial agent of the United States. Docs. 37-2, 37-3, 37-4.

On September 29, 2009, Boyd and his Greenpath counselor called Wilshire Credit, U.S. Bank's servicing agent at the time, and requested a HAMP loan modification. During the call, Boyd "provided[] the financial information that was required to determine [his] eligibility for a HAMP loan modification," and was left with the impression that Defendants soon would inform him of his eligibility for a modification. Doc. 37 at ¶ 46. Wilshire Credit never informed Boyd of his eligibility. Instead, on September 30, 2009, the day after the call, Defendants "sent their agents to break into Plaintiff's home and padlock his front door," dispossessing Boyd of his property without notice and absent court approval. *Id*. at ¶¶ 47, 49-50.

Boyd brought this action on June 2, 2010. His amended complaint has six counts. Count I alleges that Defendants violated the ICFA by failing to provide Boyd with notice that he could receive pre-foreclosure counseling and a grace period during which no legal action would be taken against him, as required by the Illinois Homeowner Protection Act, 735 ILCS 5/15-1502.5 ("IHPA"); by failing to evaluate Boyd's eligibility for a HAMP loan modification; and by failing to abide by their duties under Illinois common law. Count II alleges that Defendants violated the ICFA by dispossessing Boyd of his home without notice and absent a foreclosure order, contrary to the Illinois Mortgage Foreclosure Law ("IMFL"), 735 ILCS 5/15-1101 *et seq*. Count III claims that Wilshire Credit and Bank of America breached their SPAs with Fannie Mae. Count

IV alleges that Defendants violated the ECOA by failing to inform Boyd in writing why they denied his request for a HAMP modification. Boyd purports to bring Counts I-IV on behalf of four different putative classes. Counts V and VI advance trespass and invasion of privacy claims under Illinois common law. Boyd seeks compensatory and punitive damages, costs, fees, and injunctive relief.

## Discussion

Defendants seek to dismiss Counts I-IV, and U.S. Bank as a party defendant, under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted). The court must "take the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in [plaintiff's] favor from those allegations." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

**I.    Counts I and II:  ICFA Claims**

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The statute provides redress not only for deceptive business practices, but also for

business practices that, while not deceptive, are unfair. *See ibid*. To determine whether a business practice is unfair, the court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Id*. at 961 (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Ibid*.; *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). "Because neither fraud nor mistake is an element of unfair conduct under [the ICFA], a cause of action for unfair practices under the [ICFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal*, 536 F.3d at 670.

  A. **Count I: Alleged Unfair Practices Regarding IHPA Notice Requirements, HAMP Modification, and the Common Law**

 Count I alleges that Defendants engaged in "unfair conduct" by violating "the public policy of [Illinois], federal guidelines enacted by Congress, and common law" in the following respects: (a) failing to provide Boyd, prior to filing the August 2009 foreclosure action, with notice of his eligibility for pre-foreclosure counseling and a possible grace period, contrary to the requirements of IHPA; (b) failing to evaluate Boyd for a home loan modification under HAMP, contrary to the requirements of that program; (c) failing to abide by their common law duty of good faith and fair dealing by foreclosing on Boyd's home without informing him about the HAMP program and by failing to suspend foreclosure proceedings pending a HAMP evaluation;

and (d) taking action that further depressed Boyd's home price, in violation of their common law duty to mitigate Boyd's damages. Doc. 37 at ¶¶ 67, 76, 80. Defendants do not seek to dismiss Count I to the extent it rests on their alleged common law violations; accordingly, Count I survives to that extent, at least at the pleading stage. Defendants do maintain that Boyd cannot predicate an ICFA "unfair conduct" claim on alleged violations of HAMP or IHPA, reasoning that neither allows for a private right of action.

It is undisputed that neither HAMP nor IHPA creates a private right of action. *See Wigod v. Wells Fargo Bank, N.A.*, 2011 WL 250501, at *4 (N.D. Ill. Jan. 25, 2011); *Dugger v. Bank of Am./Countrywide Loans*, 2010 WL 3258383, at *2 (E.D. Mo. Aug. 16, 2010) (collecting HAMP cases); 735 ILCS 5/15-1502.5. However, a plaintiff may prove an ICFA unfairness claim by showing that the challenged practice "offends public policy." *Robinson*, 775 N.E.2d at 961. And a practice can offend public policy "if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *3525 N. Reta, Inc., v. FDIC*, 2011 WL 62128, at *6 (N.D. Ill. Jan. 6, 2011) (citing *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (Ill. App. 1990)); *see also Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. 1991) (court addressing ICFA unfairness claim must consider whether challenged practice "offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness"); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 2009 WL 4679477, at *1 (N.D. Ill. Dec. 1, 2009). Under this admittedly amorphous standard—which, having been adopted by the Illinois state courts, governs this court's analysis under the *Erie* doctrine—a plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations, like HAMP and IHPA, that themselves do not allow for private enforcement. *See Gainer Bank, N.A. v. Jenkins*, 672 N.E.2d

317, 318-19 (Ill. App. 1996) (holding that plaintiff may predicate an ICFA claim on defendant's violation of the Illinois Motor Vehicle Retail Installment Sales Act, which itself does not allow for private rights of action); *Ornelas v. Safeway Ins. Co.*, 1988 WL 102232, at *1 (N.D. Ill. Sept. 26, 1988) (same for Illinois Department of Insurance regulation prohibiting insurance companies from subjecting insureds to polygraph examinations).[*]

The question then becomes whether Boyd has adequately pleaded that Defendants violated HAMP and the IHPA. Defendants contend that because HAMP does not entitle any homeowner to a loan modification, their failure to evaluate Boyd's loan does not violate HAMP, and that because they did not violate HAMP, their conduct did not violate public policy or constitute an unfair business practice under the ICFA. Defendants are correct that HAMP does not automatically entitle eligible borrowers to loan modifications. *See Hart*, 735 F. Supp. 2d at 747-48. Boyd, however, does not allege that Defendants violated HAMP by declining to modify his loans. Rather, he alleges that Defendants were aware that he was in default and failed to

---

[*] The cases cited by Defendants on this issue are inapposite. Some hold that a mortgagor does not have a private right of action directly under HAMP. *See Shurtliff v. Wells Fargo Bank, N.A.*, 2010 WL 4609307, at *3 (D. Utah Nov. 5, 2010); *Inman v. Suntrust Mortg., Inc.*, 2010 WL 3516309, at *2 (E.D. Cal. Sept. 3, 2010); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *Dugger*, 2010 WL 3258383, at *2; *Zeller v. Aurora Loan Servs.*, LLC, 2010 WL 3219134, at *1 (W.D. Va. Aug. 10, 2010); *Marks v. Bank of Am., N.A.*, 2010 WL 2572988, at *4-6 (D. Ariz. June 22, 2010); *Gonzales v. First Franklin Loan Servs.*, 2010 WL 144862, at *18 (E.D. Cal. Jan. 11, 2010). Others hold that a mortgagor cannot bring a contract claim for the defendant's alleged breach of its contract with the government or of an alleged promise to modify a mortgage. *See Shurtliff*, 2010 WL 4609307, at *3; *Marks*, 2010 WL 2572988, at *4-6. Another holds that a mortgagor cannot bring an unjust enrichment claim based on the loan servicer having received substantial sums from the government and then failing to comply with HAMP. *See Aleem v. Bank of Am.*, 2010 WL 532330, at *4 (E.D. Cal. Feb. 9, 2010). And *Wigod v. Wells Fargo Bank, N.A.*, *supra*, did not address an ICFA *unfairness* claim, but held only that the mortgagor did not adequately plead an ICFA *deception* claim. *See* 2011 WL 250501, at *8-10.

even *consider* him for HAMP modification, either before or after they commenced foreclosure proceedings. Doc. 37 at ¶¶ 47, 58-59. That failure runs afoul of Treasury Department directives implementing HAMP, which provide in relevant part:

> A servicer may receive calls from current or delinquent borrowers directly inquiring about the availability of the HAMP. In that case, the servicer should work with the borrower to obtain the borrower's financial and hardship information and to determine if the HAMP is appropriate. If the servicer concludes a current borrower is in danger of imminent default, the servicer *must* consider an HAMP modification.
>
> \* \* \*
>
> To ensure that a borrower currently at risk of foreclosure has the opportunity to apply for the HAMP, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program … . Servicers *must* use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility for the HAMP, including in-person contacts at the servicer's discretion.

U.S. Dep't of Treasury, HAMP Supplemental Directive No. 09-01, at 13-14 (Apr. 6, 2009) (emphasis added) (reproduced at Docs. 37-7, 37-8).

Violations of agency directives like these can be a hallmark of unfairness under the ICFA. *See* 815 ILCS 505/2 ("In construing this section," which addresses "unfair … acts or practices," "consideration shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act"); *Robinson*, 775 N.E.2d at 960-61; *Ornelas*, 1988 WL 102232, at \*1; *see also Morris v. BAC Home Loans Servicing, L.P.*, __ F. Supp. 2d __, 2011 WL 1226974, at \*3-6 (D. Mass. Apr. 4, 2011) (holding that HAMP violations can predicate claim under analogous Massachusetts consumer protection statute). The complaint alleges not only that Defendants violated the HAMP directives, but also that the violations resulted in damage to Boyd's credit, the "repossession" of his home, and the inability to "fairly negotiate a plan to stay in [his] home[]." Doc. 37 at ¶¶ 43, 47, 49-53, 76, 80,

83. Taken together, those allegations are sufficient to state an unfair conduct claim under the ICFA. *See Windy City*, 536 F.3d at 672 (allegation of specific unfair conduct and resulting harm sufficient to state an ICFA unfairness claim); *see also Bosque v. Wells Fargo Bank, N.A.*, __ F. Supp. 2d. __, 2011 WL 304725, at *8 (D. Mass. Jan. 26, 2011) (where complaint alleged "several injuries resulting from defendant's allegedly deceptive representations about HAMP, including wrongful foreclosures, increased fees, costs incurred to avoid foreclosure, loss of opportunities to pursue refinancing or loss mitigation strategies, and emotional distress," plaintiff adequately stated a claim under analogous Massachusetts consumer protection statute).

A different result obtains for Boyd's reliance on the IHPA to predicate his ICFA unfairness claim. The IHPA requires mortgagees, before commencing certain foreclosure actions, to provide a "grace period notice" advising homeowners of a thirty-day grace period to seek housing counseling and, if such counseling is sought, of an additional thirty-day grace period before foreclosure proceedings may be commenced. 735 ILCS 5/15-1502.5(c). A grace period notice need not be sent, however, "in the circumstance in which a mortgagor has filed a petition for relief under the United States Bankruptcy Code." 735 ILCS 5/15-1502.5(b). Boyd's bankruptcy court filings, which are subject to judicial notice, establish that Boyd filed several bankruptcy petitions, including one in January 2009 that sought relief from the mortgage debt at issue in this litigation. *See In re Zachary Boyd*, 09 B 2366 (Bankr. N.D. Ill.).

Boyd contends that the 2009 bankruptcy action does not strip him of the IHPA's protections because it was dismissed in June 2009 and Defendants did not commence foreclosure proceedings until two months later. Doc. 57 at 19. Boyd's premise is that the IHPA excuses a mortgagee from complying with its terms only if the mortgagor's bankruptcy action remains pending when the grace period notice is due. That premise cannot be reconciled with the


statute's text, which broadly exempts from the notice requirement any residential mortgagor who "*has* filed" for relief under the Bankruptcy Code, 735 ILCS 5/15-1502.5(b) (emphasis added), a term that encompasses all bankruptcy proceedings, whether or not they remain pending, in which the debtor sought relief from the mortgage in question. *See* Stephen Ornstein, Matthew Yoon & John Holahan, *Recent Amendments to Illinois Foreclosure Law*, 63 Consumer Fin. L. Q. Rep. 230, 231 (2009) (notice requirement applies "in situations where the borrower has not yet filed for protection under the United States Bankruptcy Code"). Nor can Boyd's premise be reconciled with common sense; under his view of the IHPA, mortgagors who fail to make bankruptcy plan payments would be rewarded with renewed coverage under the IHPA upon dismissal of their bankruptcy actions, while mortgagors who satisfy their bankruptcy plan would remain uncovered.

      Accordingly, because Defendants' failure to send Boyd a grace period notice did not violate the IHPA, it may not serve as a predicate for his ICFA action. *See Robinson*, 775 N.E.2d at 962-63 (ICFA claim may not be predicated on alleged violation of Truth In Lending Act ("TILA") where challenged conduct did not, in fact, violate TILA). Count I is dismissed only to the extent it is predicated on alleged IHPA violations. The fact that Count I survives in all other respects at the pleading stage does not indicate, one way or the other, whether Count I can survive summary judgment after a factual record is adduced or whether the ICFA claim stated in Count I can proceed as a class action. *See Siegel*, 612 F.3d at 935-37; *Clark v. Experian Info. Solutions, Inc.*, 256 Fed. Appx. 818, 820-22 (7th Cir. 2007).

B. **Count II: Alleged Unfair Practices Regarding Dispossession of Boyd's Home Absent a Foreclosure Order**

Count II alleges that Defendants engaged in an unfair practice under the ICFA by breaking into and padlocking Boyd's home, dispossessing him of his property, without notice or court approval. Doc. 37 at ¶¶ 47-52, 85-104. That practice, Boyd claims, violated the IMFL. *See* 735 ILCS 5/15-1508(b-5); 735 ILCS 5/15-1701(b)-(c). Defendants offer three grounds to dismiss Count II, but none persuades.

First, Defendants contend that Boyd may not predicate his ICFA claim on an IMFL violation because the IMFL does not create a private right of action. That argument fails for the reasons set forth above regarding HAMP and the IHPA—a plaintiff may predicate an ICFA unfairness claim on violations of a statute that itself does not allow for private enforcement.

Second, Defendants contend that Boyd's ICFA claim cannot be predicated on an IMFL violation because the IMFL is not among the statutes enumerated in section 2Z of the ICFA. Section 2Z provides that "[a]ny person who knowingly violates" any of twenty-eight or so listed statutes "commits an unlawful practice within the meaning of" the ICFA. 815 ILCS 505/2Z. Defendants read too much into section 2Z. The statute simply creates a *per se* rule, providing that a defendant's *knowing* violation of any of the enumerated statutes *automatically* constitutes an unlawful practice under the ICFA. The violation (knowing or unknowing) of other statutes, regulations, or legal rules does not automatically predicate an ICFA claim, but can predicate a claim if the alleged misconduct is independently deceptive or unfair within the meaning of the ICFA. *See W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, 2006 WL 1697119, at *3 (N.D. Ill. June 13, 2006); *Perperas v. United Recovery Sys., Inc.*, 1997 WL 136326, at *3-4 (N.D. Ill. Mar. 19, 1997); *Gainer Bank*, 672 N.E.2d at 318-19 (ICFA claim predicated on defendant's

violation of the Illinois Motor Vehicle Retail Installment Sales Act, a statute not enumerated in section 2Z, where plaintiff's allegations indicated that misconduct was unfair under ICFA); *cf. Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 604 (Ill. App. 2009) (rejecting plaintiff's submission that breach of an unenumerated statute, without more, violates ICFA); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 640 (N.D. Ill. 2002) (same). The allegations underlying Count II are sufficient at the Rule 12(b)(6) stage to allege an unfair practice under the ICFA.

Third, Defendants argue that the complaint does not adequately allege that Boyd was forced to leave his property:

> All Plaintiff has alleged is that Defendants entered the property to secure it after significant default by Plaintiff. Plaintiff has not alleged that Defendants kicked him out of his property or impaired his ability to live there. Plaintiff remained in possession of the property—and still remains in possession—throughout this time. … [B]y his own allegations he was not prohibited from removing the locks and continuing possession … .

Doc. 61 at 9. This description of the complaint is not accurate. The complaint expressly alleges that Boyd was "dispossessed from [his] home[]," Doc. 37 at ¶¶ 103, 154, and "deprived" of his "right to remain in [his] home[]," *id*. at ¶ 101, when Defendants broke in home and padlocked his doors, *id*. at ¶ 98. *See also id*. at ¶¶ 47-52. This conduct is alleged to have occurred after Boyd received a summons in the 2009 foreclosure action stating, "The lawful occupants of a home have a right to live in the home until a judge enters an order for possession." *Id*. at ¶ 102. There is no allegation in the complaint that Boyd continues to possess or reside in the home. Although the facts adduced in discovery may show otherwise, Boyd's allegations of dispossession must be accepted on a Rule 12(b)(6) motion. *See Abcarian*, 617 F.3d at 933.

Finally, Defendants contend that their alleged conduct cannot violate the ICFA because Boyd's mortgage agreements allowed Defendants to enter and secure his property in the event of default. The mortgage states:

> Protection of Lenders' Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument … then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. … Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

Doc. 50 at 8. Defendants maintain that this provision "granted Defendants permission to enter the property to secure or repair it in the event of default. Defendants' alleged agents were simply attempting to protect Defendants' collateral during foreclosure." Doc. 48 at 16.

Boyd, however, does not allege that the Defendants merely *secured* his home without his permission; he alleges, rather, that Defendants broke into and ransacked his home and padlocked his door, thus *dispossessing* him of the property. Doc. 37 at ¶¶ 47-50, 86, 93-96, 98-99, 101, 103. Accepting these allegations as true, Defendants' actions offended public policy as embodied in the IMFL. "[I]n residential real estate foreclosure actions, the presumptive right to possession during foreclosure rests with the mortgagor of the residential real estate." *Mellon Bank, N.A. v. Midwest Bank & Trust Co.*, 638 N.E.2d 640, 645 (Ill. App. 1993); *see also CenterPoint Props. Trust v. Olde Prairie Block Owner, LLC*, 923 N.E.2d 878, 888 (Ill. App. 2010) (IMFL "creates a presumption in favor of the mortgagor's right to possession in the case of residential real estate") (internal quotation marks omitted). The right of a mortgagor to possess his residence during foreclosure can be overcome only if "(i)" the mortgagee shall object

and show good cause, (ii) the mortgagee is so authorized by the terms of the mortgage or other written instrument, *and* (iii) the court is satisfied that there is reasonable probability that the mortgagee will prevail on a final hearing of the cause." 735 ILCS 5/15-1701(b)(1) (emphasis added). Because the pleadings do not establish as a matter of law that Defendants satisfied these requirements, Count II cannot be dismissed on that ground.

## II.     Count III:  Breach of SPA

Count III alleges that Wilshire Credit and Bank of America breached their SPAs with Fannie Mae, and that Boyd, while not a party to the agreements, is a third-party beneficiary entitled to sue for their breach. Two weeks ago, while the present motion was pending, the Supreme Court issued *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. __, 2011 WL 1119021 (U.S. Mar. 29, 2011), which holds that the private plaintiffs in that action were not third-party beneficiaries of the defendants' contracts with the federal government. The next day, Boyd filed a notice acknowledging that Count III should be dismissed in light of *Astra USA*. Doc. 64. Count III accordingly is dismissed with prejudice.

## III.    Count IV:  ECOA

Count IV alleges that Defendants violated the ECOA by failing to inform Boyd in writing why they denied his request for a HAMP loan modification. The ECOA provides that "[w]ithin thirty days … after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application," and that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(1), (2); *see also* 12 C.F.R. § 202.9(a)(1)(i). An "applicant" includes individuals, like Boyd, who seek a loan modification. *See* 15 U.S.C. § 1691a(b) (defining "applicant" as "any person who applies to a creditor directly for an extension, renewal, or

continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit"); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011); *Obi v. Chase Home Fin., LLC*, 2011 WL 529481, at *6 (N.D. Ill. Feb. 8, 2011). A plaintiff alleging a § 1691(d) violation need not allege or prove membership in a protected class. *See Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 728 (N.D. Ill. 2005) (collecting cases).

Defendants' only argument for dismissing Count IV is that the complaint does not allege that Boyd submitted a "completed application" for a HAMP modification. A completed application "means an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested … ." 12 C.F.R. § 202.2(f); *see also Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 981 (7th Cir. 2004). The complaint alleges that during the telephone call between Boyd and Wilshire Credit on September 29, 2009, "Defendants requested, and Plaintiff provided, the financial information that was required to determine Plaintiff's eligibility for a HAMP loan modification." Doc. 37 at ¶ 46. That allegation, which must be taken as true at the Rule 12(b)(6) stage, satisfies the "completed application" requirement. *See Errico v. Pac. Capital Bank, N.A.*, __ F. Supp. 2d __, 2010 WL 4699394, at *6 (N.D. Cal. Nov. 9, 2010) (denying motion to dismiss where plaintiff alleged that creditor received all information it regularly obtains and considers, even if plaintiff's application set forth less information than others); *Moffitt v. Bank of Am., N.A.*, 2009 WL 5217147, at *3 (S.D. Ind. Dec. 29, 2009) (complaint sufficiently alleged a completed application where plaintiff alleged he "filled out an application" and submitted information at defendant's request); *Jefferson v. Briner Inc.*, 2006 WL 1720692, at *6 n.4 (E.D. Va. June 21, 2006). The fact that Boyd applied over the

telephone, rather than in writing, is immaterial. *See* 12 C.F.R. § 202.2(f) ("Application means an oral or written request … made in accordance with procedures used by a creditor for the type of credit requested."); Supplemental Directive 09-01, *supra*, at 13 ("A servicer may receive calls from current or delinquent borrowers directly inquiring about the availability of the HAMP. In that case, the servicer should work with the borrower to obtain the borrower's financial and hardship information and to determine if the HAMP is appropriate. If the servicer concludes a current borrower is in danger of imminent default, the servicer must consider an HAMP modification.").

As with the ICFA claims, the denial of Defendants' motion to dismiss the ECOA claim does not mean that Boyd can pursue class relief under the ECOA or that his individual claim will survive summary judgment.

### IV. Claims Against U.S. Bank as Trustee

Defendants contend that U.S. Bank should be dismissed as a party defendant because the complaint "fails to assert any factual allegations of the misconduct or violation of duty by [U.S. Bank]." Doc. 48 at 21. As noted above, Boyd's ICFA claims rest on allegations of unfair conduct, not deceptive conduct, and thus must satisfy only the ordinary pleading standards of Rule 8(a), not the heightened standards of Rule 9(b). *See Windy City*, 536 F.3d at 670. Nor does Rule 9(b) apply to Boyd's ECOA and common law claims. *See Estate of Davis*, 633 F.3d at 538; *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 903 (7th Cir. 2007); *Kmart Corp. v. R.K. Hooksett, LLC*, 2010 WL 610994, at *2 (D.N.H. Feb. 19, 2010) (collecting cases).

The Rule 8(a) standard is satisfied with respect to U.S. Bank's alleged liability. The complaint alleges that U.S. Bank owned the mortgage and that Wilshire Credit and Bank of America serviced the mortgage on U.S. Bank's behalf. Doc. 37 at ¶¶ 23, 29, 31, 37. The

complaint further alleges that "Defendants chose to initiate a foreclosure action against Mr. Boyd," *id*. at ¶ 42—an action that was brought in U.S. Bank's name. Doc. 48 at 1 n.1 (where Defendants ask the court to take judicial notice of "*U.S. Bank Nat'l Ass'n, as Trustee v. Boyd*, 09 CH 29647 (Circuit Court of Cook County, Filed August 21. 2009) (the '2009 Foreclosure Action')"); Doc. 20-7 (the complaint in the 2009 foreclosure action). And at several points, the complaint expressly alleges that Wilshire Credit and Bank of America, when taking unlawful actions against Boyd, were acting as U.S. Bank's agent. *Id*. at ¶¶ 23, 31, 45, 56, 129a.

These allegations, taken together, are sufficient to plead U.S. Bank's liability at the Rule 12(b)(6) stage. *See Hodges v. United States Bank Home Mortg.*, 2011 WL 211343, at *2 (N.D. Ill. Jan. 20, 2011) (denying motion to dismiss U.S. Bank where the complaint "alleged that Extreme was acting on the orders of U.S. Bank when it entered Hodges' residence and changed the locks"); *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 840 (N.D. Ill. 2009) (under Illinois law, "whether CCA can be deemed to have acted as AT&T's agent is … a factual matter and cannot be decided on a motion to dismiss"); *Hoffman v. Option One Mortg. Corp.*, 589 F. Supp. 2d 1009, 1012 (N.D. Ill. 2008) (denying motion to dismiss ECOA defendants where complaint alleged an agency relationship between defendants and individuals who actually set the offending credit price). Defendants have placed certain trust and service agreements in the record that they believe show that U.S. Bank cannot be held liable as Wilshire Credit's and Bank of America's principal (Docs. 20-3, 20-4, 20-5, 20-6), but those documents fall outside the pleadings and thus cannot be considered on a Rule 12(b)(6) motion. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

**Conclusion**

To summarize, Defendants motion to dismiss is granted in part—as to Count I to the extent it relies on an alleged violation of the IHPA, and as to Count III in its entirety—and denied in all other respects. Defendants shall answer the surviving portions of the amended complaint by May 4, 2011.

April 12, 2011

_____
United States District Judge